UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY JO SILVA,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    Defendant. | No. 2:17-cv-1752 DB<br><br><br>ORDER |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[1] Plaintiff's motion argues that the Administrative Law Judge's step two evaluation, treatment of the medical opinion evidence, plaintiff's testimony, residual functional capacity determination, and hypothetical question to the Vocational Expert were erroneous.

For the reasons explained below, plaintiff's motion is granted, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for the payment of benefits.

////

---

[1] Both parties have previously consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c). (See ECF Nos. 7 & 8.)

# PROCEDURAL BACKGROUND

"On June 24, 2014," plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), alleging disability beginning on May 1, 2014. (Transcript ("Tr.") at 20, 157-63.) Plaintiff's alleged impairments included diabetes, gout, asthma, and high blood pressure. (Id. at 62.) Plaintiff's application was denied initially, (id. at 85-89), and upon reconsideration. (Id. at 93-97.)

Plaintiff requested an administrative hearing and a hearing was held before an Administrative Law Judge ("ALJ") on March 15, 2016. (Id. at 34-61.) Plaintiff was represented by an attorney and testified at the administrative hearing. (Id. at 34-36.) In a decision issued on May 12, 2016, the ALJ found that plaintiff was not disabled. (Id. at 29.) The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2018.
>
> 2. The claimant has not engaged in substantial gainful activity since May 1, 2014, the alleged onset date (20 CFR 404.1571 *et seq*.).
>
> 3. The claimant has the following severe impairments: left knee osteoarthritis status post two surgeries, diabetes type 1 with insulin pump, and gout (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with occasional lifting of ten pounds, frequent lifting of five pounds; standing for two hours in an eight-hour [workday], sitting for six hours in an eight-hour workday; no climbing ladders, ropes, or scaffolds; occasional climbing ramps and stairs; occasional crouching, crawling balancing, and kneeling; and frequent stopping.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> 7. The claimant was born on July 30, 1952 and was 61 years old, which is defined as an individual closely approaching retirement age, on the alleged disability onset date (20 CFR 404.1563).

////

> 8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).
>
> 9. The claimant has acquired work skills from past relevant work (20 CFR 404.1568).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a) and 404.1568(d)).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2014, through the date of this decision (20 CFR 404.1520(g)).

(Id. at 22-29.)

On July 19, 2017, the Appeals Council denied plaintiff's request for review of the ALJ's May 12, 2016 decision. (Id. at 1-6.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on August 22, 2017. (ECF. No. 1.)

**LEGAL STANDARD**

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff's pending motion argues that the ALJ committed the following five principal errors: (1) the ALJ erred at step two of the sequential evaluation; (2) the ALJ's treatment of the medical opinion evidence constituted error; (3) the ALJ's treatment of plaintiff's subjective testimony constituted error; (4) the ALJ's residual functional capacity determination failed to account for all of plaintiff's impairments; and (5) the ALJ's hypothetical question to the Vocational Expert was incomplete. (Pl.'s MSJ (ECF No. 16) at 16-31.[2])

**I. Step Two Error**

At step two of the sequential evaluation, the ALJ must determine if the claimant has a medically severe impairment or combination of impairments. Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 140-41). The Commissioner's regulations

---

[2] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

4

provide that "[a]n impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a) & 416.921(a). Basic work activities are "the abilities and aptitudes necessary to do most jobs," and those abilities and aptitudes include: (1) physical functions such as walking, standing, sitting, lifting, and carrying; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) & 416.921(b).

The Supreme Court has recognized that the Commissioner's "severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." Yuckert, 482 U.S. at 153. However, the regulation must not be used to prematurely disqualify a claimant. Id. at 158 (O'Connor, J., concurring). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." Smolen, 80 F.3d at 1290 (internal quotation marks and citation omitted).

"[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 85-28); see also Ukolov v. Barnhart, 420 F.3d 1002, 1006 (9th Cir. 2005) (claimant failed to satisfy step two burden where "none of the medical opinions included a finding of impairment, a diagnosis, or objective test results"). "Step two, then, is 'a de minimis screening device [used] to dispose of groundless claims[.]'" Webb, 433 F.3d at 687 (quoting Smolen, 80 F.3d at 1290); see also Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001) (discussing this "de minimis standard"); Tomasek v. Astrue, No. C-06-07805 JCS, 2008 WL 361129, at *13 (N.D. Cal. Feb.11, 2008) (describing claimant's burden at step two as "low").

////

Here, plaintiff argues that the ALJ erred at step two of the sequential evaluation by failing to identify plaintiff's heart conditions and obesity as severe impairments. (Pl.'s MSJ (ECF No. 16) at 16-17.)

**A.     Heart Condition**

In finding plaintiff's heart condition not severe at step two of the sequential evaluation, the ALJ stated:

> A December 2013 echocardiogram and a January 2014 stress test revealed only mild abnormal findings. A February 2014, pulmonary function study demonstrated only mild restriction and mild obstruction. She was treated for chest pain and shortness of breath in April 2014. An April 14, 2014, cardiac catheterization showed 65% LAD stenosis and 50% right coronary stenosis.[3]

(Tr. at 22-23) (citations omitted).

In this court's view, the presence of a 50% stenosis and a 65% stenosis cannot be characterized as a slight abnormality. Moreover, the cardiac catheterization was recommended by plaintiff's treating cardiologist on March 25, 2014. (Id. at 414.) At that visit, plaintiff's cardiologist advised plaintiff "not to exercise at this time due to her cardiac condition." (Id.)

Additionally, the ALJ's finding that plaintiff's heart condition was not severe was also based on the finding that "[i]n July 2014, her treating physician noted that the findings from the claimant's recent cardiac diagnostic testing 'looked fine.'" (Id. at 23.) This statement by the ALJ is erroneous in two respects. First, examination of the record cited by the ALJ in support reveals that the statement was not made by plaintiff's treating physician, but instead by a nurse practitioner. (Id. at 404.)

Second, and more consequential, the statement was not that diagnostic testing looked fine. Instead, the nurse practitioner stated that plaintiff had a "Heart Cath on March 2014," and that "every thing was fine with the cath." (Id. at 405.) Although one could argue over the interpretation of this statement, the statement does not state that diagnostic testing looked fine.[4]

---

[3] "Stenosis is a narrowing of a passage or canal." Thayne v. Sullivan, No. CIV. S-91-1289 WBS GGH, 1992 WL 459569, at *19 (E.D. Cal. Sept. 25, 1992).

[4] In a confounding argument that perhaps confuses the ALJ's finding and plaintiff's argument,

6

As noted above, the ALJ's conclusion that the claimant lacks a medically severe impairment or combination of impairments is valid only when that conclusion is "clearly established by medical evidence." Webb, 433 F.3d at 687. Here, given the evidence noted above, the court cannot say that the ALJ's conclusion that plaintiff's heart condition was not severe was clearly established by medical evidence. See Ortiz v. Commissioner of Social Sec., 425 Fed. Appx. 653, 655 (9th Cir. 2011) ("This is not the total absence of objective evidence of severe medical impairment that would permit us to affirm a finding of no disability at step two."); Webb, 433 F.3d at 687 ("Although the medical record paints an incomplete picture of Webb's overall health during the relevant period, it includes evidence of problems sufficient to pass the de minimis threshold of step two."); Russell v. Colvin, 9 F.Supp.3d 1168, 1186-87 (D. Or. 2014) ("On review, the court must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that Ms. Russell did not have a medically severe impairment or combination of impairments."); cf. Ukolov, 420 F.3d at 1006 ("Because none of the medical opinions included a finding of impairment, a diagnosis, or objective test results, Ukolov failed to meet his burden of establishing disability.").

**B.     Obesity**

Plaintiff argues that the ALJ's decision "never once discussed Ms. Silva's morbid obesity[.]" (Pl.'s MSJ (ECF No. 16) at 17.) The ALJ must consider a claimant's obesity at steps two through five of the sequential evaluation. SSR 02-1p, 2002 WL 34686281 (2002). Moreover, the ALJ must also consider obesity in combination with the individual's other impairments. Id. Social Security Ruling ("SSR") 02-1p directs that "[the ALJ] will not make assumptions about the severity or functional effects of obesity combined with other impairments." Id. Instead, "[the ALJ] will evaluate each case based on the information in the case record." Id.

Defendant does not dispute plaintiff's argument. Instead, defendant argues that "there was no need to mention obesity, specifically in the decision," because obesity "is no longer a

---

defendant argues "contrary to Plaintiff's assertion, Nurse Reed did, in fact, indicate in numerous treatment notes that "Pt had a Heart Cath on March 2014-everything was fine with the cath." (Def.'s MSJ (ECF No. 21) at 16.) That is true. It also plaintiff's argument and supports the conclusion that the ALJ erred.

7

separate listing[.]" (Def.'s MSJ (ECF No. 21) at 15.) The change defendant refers to—the deletion of Listing 9.09—occurred on August 23, 1999. See SSR 02-1P, 2002 WL 34686281, at *1 ("On August 24, 1999, we published a final rule in the Federal Register deleting listing 9.09, Obesity, from the Listing of Impairments[.]").

SSR 02-1P explicitly states that obesity may be considered a severe impairment. See Id. at *4 ("As with any other medical condition, we will find that obesity is a 'severe' impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities."). In this regard, "[i]n determining whether a claimant's obesity is a severe impairment, an ALJ must 'do an individualized assessment of the impact of obesity on an individual's functioning." Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (quoting SSR 02-1P); see also Browning v. Colvin, 228 F.Supp.3d 932, 944 (N.D. Cal. 2017) ("the total omission of a claimant's obesity from the disability analysis may constitute reversible error").

Accordingly, for the reasons stated above, the court finds that plaintiff is entitled to summary judgment on the claim that the ALJ erred at step two of the sequential evaluation by finding that plaintiff's heart condition and obesity were not severe impairments.[5]

## II. Medical Opinion Evidence

Plaintiff's pending motion argues that "[i]t is difficult, if not impossible, to imagine a more flagrant violation of well-settled decisional authority, as well as the Commissioner's own guidelines," than the ALJ's treatment of the medical opinion evidence here. (Pl.'s MSJ (ECF No. 16) at 19.) Review of the ALJ's decision finds plaintiff's argument well taken.[6]

---

[5] In light of the ALJ's other errors, addressed below, the court need not address defendant's argument that any step two error was harmless.

[6] Defendant attempts to provide the evidence and argument that is entirely lacking from the ALJ's decision. (Def.'s MSJ (ECF No. 21) at 18-20.) However, the court may not speculate as to the ALJ's findings or the basis of the ALJ's unexplained conclusions. See Bray v. Commissioner of Social Security Admin., 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]" Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." (Id. at 831.) Finally, although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

**A.   Dr. Michael Farley**

The ALJ's decision recounted Dr. Farley's treating opinion, stating:

> In a March 15, 2016, medical source statement, Dr. Farley opined that the claimant was limited to restrictions consistent with less than a full range of sedentary work. Specifically, Dr. Farley opined that the claimant was limited to standing for less than two hours in an eight-hour workday and she can never climb, balance, stoop, kneel, crouch or crawl.

(Tr. at 27.) The ALJ afforded Dr. Farley's opinion "little weight."[7] (Id.)

---

[7] The ALJ's decision afforded "little weight" to the opinions of a treating physician, a "treating medical provider," a consultative examiner, and a non-examining physician. (Tr. at 27.) The

The ALJ supported this finding by asserting that Dr. Farley's opinion was "inconsistent with the medical evidence of record." (Id.) "An ALJ may only reject a treating physician's contradicted opinion[] by providing 'specific and legitimate reasons that are supported by substantial evidence.'" Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008)). "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (quoting Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986)).

Here, the ALJ rejected Dr. Farely's opinion as inconsistent with the medical evidence of record without even a single citation to evidence in support of the assertion, let alone a detailed and thorough summary of the facts and conflicting clinical evidence. (Tr. at 27.) "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." Garrison v. Colvin, 759 F.3d 995, 1012-13 (9th Cir. 2014); see also Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity . . . required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.").

The ALJ went on to assert that plaintiff "does not require an assistive device to walk." (Tr. at 27.) The significance of this seeming non sequitur is lost on the court. Plaintiff's can be limited to less than a full range of sedentary work, as Dr. Farley opined plaintiff was, without the need of an assistive device to walk.

The ALJ also asserted that plaintiff's "knee pain and gout are effectively controlled with medication," with plaintiff only rating "her overall pain level as a 5/10." (Id.) Again, this

---

only other medical opinion consider was that of another non-examining physician, which the ALJ afforded only "some weight." (Id. at 26.)

assertion by the ALJ is not supported by a single citation to the evidence of record.[8]  And a November 17, 2014 progress note reflects that plaintiff was seen for knee pain, that plaintiff's pain varied from "5/10," "8/10," and "10/10," within the prior 30 days, and that plaintiff was considered for a total knee replacement.  (Id. at 441.)  An October 16, 2014 progress note reflects that plaintiff's gout was "[n]ot well controlled."  (Id. at 395.)

Finally, the ALJ asserted that Dr. Farley's opinion was, apparently, inconsistent with plaintiff's "wide variety of daily activities, including driving, shopping, and light housework," again without citing any evidence of record.  (Id. at 27.)  The court would not characterize driving, shopping, and light housework as a wide variety of daily activities.  And the ALJ does not explain specifically how those activities are inconsistent with Dr. Farley's opinion.  Nor is it apparent why those activities are at all inconsistent with Dr. Farley's opined limitations.

Moreover,

> [t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer.  The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012).

Accordingly, the court finds that the ALJ failed to offer specific and legitimate, let alone clear and convincing, reasons for rejecting Dr. Farley's opinion.

**B.     Dr. Anita Kemp**

The ALJ's decision recounted Dr. Kemp's examining opinion, stating:

> Dr. Kemp opined that the claimant had moderate impairment in her ability to deal with changes in a routine work setting and moderate impairment in her ability to do work activities in a safe manner.  In addition, Dr. Kemp opined that the claimant had mild impairment in her ability to perform complex tasks.

////

---

[8] As has been said with respect to briefs filed by lawyers, "[j]udges are not like pigs, hunting for truffles buried in" the evidence of record in evaluating decisions of the ALJ.  U.S. v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991).

> Lastly, Dr. Kemp assed the claimant with a Global Assessment of Functioning (GAF) score of 75, which indicates that if symptoms are present, they are transient and expectable reactions to psychosocial stressors.

(Tr. at 27.)

The ALJ's treatment and discussion of Dr. Kemp's opinion mirrors the ALJ's treatment of Dr. Farley's opinion. In this regard, the ALJ afforded Dr. Kemp's opinion only "little weight." (Id. at 27.) The ALJ also made the same unsupported and conclusory findings that Dr. Kemp's opinion was "inconsistent with the medical evidence of record," that plaintiff's "depression is effectively managed with medications," and that plaintiff engaged in a "wide variety of daily activities, including driving and shopping." (Id.) These findings are erroneous for the same reasons stated in the discussion of the ALJ's treatment of Dr. Farley's opinion.

The ALJ also asserted, again in an unsupported and conclusory manner, that plaintiff "does not participate in counseling." (Tr. at 27.) It is unclear why this fact is inconsistent with plaintiff's treatment of depression with medication alone or with Dr. Kemp's opinion. And the ALJ made no effort to explain the connection. Moreover, the Ninth Circuit has,

> ... particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'

Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1299-1300 (9th Cir. 1999) (quoting Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)).

Finally, the ALJ stated that "[d]uring the hearing, [plaintiff's] demeanor was appropriate and she had no difficulty answering questions." (Tr. at 27.) Again, it is unclear why this observation by the ALJ is inconsistent with Dr. Kemp's opinion that plaintiff was, for example, moderately impaired in her ability to perform complex tasks. And the ALJ made no effort to explain the importance of the observation. Moreover, the ALJ's reliance on personal observations of the claimaint at the hearing "has been condemned as 'sit and squirm' jurisprudence." Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985) (quoting Freeman v. Schweiker, 681 F.2d 727, 731 (11th Cir. 1982)).

For the reasons stated above, the court finds that the ALJ failed to offer specific and legitimate, let alone clear and convincing, reasons for rejecting Dr. Kemp's opinion. Plaintiff is, therefore, entitled to summary judgment on the claim that the ALJ's treatment of the medical opinion evidence constituted error.[9]

### III. Plaintiff's Subjective Testimony

Plaintiff next challenges the ALJ's treatment of plaintiff's subjective testimony. (Pl.'s MSJ (ECF No. 16) at 22-27.) The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so[.]

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking[.]" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

////

////

---

[9] Plaintiff also challenges the ALJ's failure to discuss the records of plaintiff's treating cardiologist and primary care physician. (Pl.'s MSJ (ECF No. 16) at 21-22.) Having already found that the ALJ's treatment of the medical opinion evidence was erroneous, the court need not reach this argument.

13

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."[10] Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

Here, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reason explained in [the] decision." (Tr. at 26.) The ALJ then provided the following conclusory explanation, repeating the same errors the ALJ made in evaluating the opinions of Dr. Farley and Dr. Kemp:

> During her July 2014 Field Office interview, she was able to answer questions without difficulty and she was pleasant. While she had slight difficulty standing up from a seated position and she walked with a limp, she was able to sit without notable limitation.[11] She performed a wide variety do (sic) daily activities, including laundry, driving, and shopping. She does not require an assistive device to walk.

---

[10] In March 2016, Social Security Ruling ("SSR") 16-3p went into effect. "This ruling makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." Trevizo v. Berryhill, 871 F.3d 664, 679 (9th Cir. 2017) (quoting SSR 16-3p) (alterations omitted).

[11] Here, the ALJ provided a citation to exhibit 1E, the Disability Report-Field Office-Form SSA-3367. (Tr. at 27.)

14

> Despite the limitations caused by her severe impairments, the claimant retains the ability to perform sedentary work. She is not unable to work, as alleged.

(Id. at 27.)

Again, the ALJ's analysis of plaintiff's testimony repeats the errors found in the ALJ's analysis of the medical opinion evidence. Due to these errors, and the vague and conclusory nature of the ALJ's analysis of plaintiff's testimony, the ALJ's decision fails to even approach a clear and convincing reason for rejecting plaintiff's testimony. See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled."); Gallant v. Heckler, 753 F.2d 1450, 1455 (9th Cir. 1984) ("The fact that a claimant does not exhibit physical manifestations of prolonged pain at the hearing provides little, if any, support for the ALJ's ultimate conclusion that the claimant is not disabled or that his allegations of constant pain are not credible.").

Accordingly, plaintiff is also entitled to summary judgment on the claim that the ALJ's treatment of plaintiff's testimony constituted error.

## IV. Remaining Claims of Error

Plaintiff's motion argues that the ALJ's Residual Functional Capacity ("RFC") determination failed to account for all of plaintiff's impairments. (Pl.'s MSJ (ECF No. 16) at 27-28.) A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.945(1); see also Cooper v. Sullivan, 880 F.2d 1152, n.5 (9th Cir. 1989) ("A claimant's residual functional capacity is what he can still do despite his physical, mental, nonexertional, and other limitations.").

In conducting an RFC assessment, the ALJ must consider the combined effects of an applicant's medically determinable impairments on the applicant's ability to perform sustainable work. 42 U.S.C. § 423(d)(2)(B); Macri v. Chater, 93 F.3d 540, 545 (9th Cir. 1996). The ALJ must consider all of the relevant medical opinions as well as the combined effects of all of the plaintiff's impairments, even those that are not "severe." 20 C.F.R. §§ 404.1545(a); 416.945(a);

Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003). "[A]n RFC that fails to take into account a claimant's limitations is defective." Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). The ALJ must determine a claimant's limitations on the basis of "all relevant evidence in the record." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

Plaintiff also argues that the ALJ's hypothetical question to the Vocational Expert ("VE") was incomplete.[12] (Pl.'s MSJ (ECF No. 16) at 28-30.) At step five, "the Commissioner has the burden 'to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations.'" Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (quoting Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (alterations in original)). "To aid in making this determination, the ALJ may rely on an impartial vocational expert to provide testimony about jobs the applicant can perform despite his or her limitations." Gutierrez v. Colvin, 844 F.3d 804, 806-07 (9th Cir. 2016).

While an ALJ may pose a range of hypothetical questions to a VE based on alternate interpretations of the evidence, the hypothetical question that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical question that is predicated on the ALJ's final residual functional capacity assessment, must account for all of the limitations and restrictions of the particular claimant. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009).

"If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." Id. (citation and quotation marks omitted); see also Taylor v. Commissioner of Social Sec. Admin., 659 F.3d 1228, 1235 (9th Cir. 2011) ("Because neither the hypothetical nor the answer properly set forth all of Taylor's impairments, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings."). Moreover, "[w]hen there is an apparent conflict between the VE's testimony and the Dictionary of

---

[12] Plaintiff's motion also challenges the VE's testimony with respect to plaintiff's transferable skills. (Pl.'s MSJ (ECF No. 16) at 30.) Having found error with respect to the VE's testimony, the court need not reach this argument.

Occupational Titles ("DOT")—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." Zavalin, 778 F.3d at 846.

Here, because of the ALJ's errors concerning plaintiff's severe impairments, treatment of the medical opinion evidence, and treatment of plaintiff's subjective testimony the ALJ's RFC was not based on all relevant evidence in the record. And the ALJ's hypothetical question to the VE did not include all of plaintiff's limitations. In this regard, the ALJ's RFC determination and hypothetical question did not account for plaintiff's heart condition, obesity, Dr. Farley's opinion, Dr. Kemp's opinion, and plaintiff's testimony concerning the limitations caused by plaintiff's impairments. Accordingly, plaintiff is also entitled to summary judgment on these claims.

## CONCLUSION

After having found error, "'[t]he decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" Trevizo v. Berryhill, 871 F.3d 664, 682 (9th Cir. 2017) (quoting Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020.

Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Soc. Sec. Admin.,
////

775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, plaintiff argues that this case should be remanded for the immediate award of benefits and the court agrees. Despite the ALJ's numerous errors, the record has been fully developed such that further administrative proceedings would serve no useful purpose. In this regard, the record contains ample evidence, testimony, and medical opinion evidence. As noted above, the ALJ failed to provide legally sufficient reasons for rejecting several items of evidence.

Moreover, if that improperly discredited evidence were credited as true, the ALJ would be required to find plaintiff disabled on remand. Dr. Farley's opinion alone establishes plaintiff's disability as confirmed by the VE's testimony. When the VE was asked a question that included the limitations opined by Dr. Farley, the VE answered that there were no jobs such a person could perform. (Tr. at 59-60.) "Such a finding by the vocational expert is a sufficient basis upon which to remand for determination of benefits." Wechel v. Berryhill, 713 Fed. Appx. 559, 562 (9th Cir. 2017). Furthermore, the record as whole does not create serious doubt as to whether plaintiff is disabled. See Moe v. Berryhill, 731 Fed. Appx. 588, 592 (9th Cir. 2018) ("Remand for immediate award of benefits is appropriate in this case because all three factors of the credit-as-true rule are satisfied, leaving no 'serious doubt' as to Moe's disability.").

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 16) is granted;

2. Defendant's cross-motion for summary judgment (ECF No. 21) is denied;

3. The Commissioner's decision is reversed;

4. This matter is remanded for the immediate award of benefits; and

5. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

Dated: March 15, 2019

/s/ Deborah Barnes

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\silva1752.ord

18